IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES                                     PLAINTIFF/RESPONDENT

V.                              No.  2:08-CR-20031-JLH
                                No.  2:10-CV-02112-JLH

ANDREW PHILLIP NICHOLS                            DEFENDANT/PETITIONER


REPORT AND RECOMMENDATION


Before the undersigned for report and recommendation is the petitioner's Habeas Corpus

Petition *ECF No. 102* filed July 29, 2010 under 28 U.S.C. § 2255.  The Government filed its

Response *ECF No. 104* on September 2, 2010 and the Petitioner filed a Reply *ECF No. 109* on

October 29, 2010. The court appointed James Pierce to represent the Defendant *ECF No. 113* and

set the matter for an evidentiary on November 14, 2010 but weather caused the hearing to be

continued to April 19, 2011.

I.  Background

On April 29, 2008, a federal grand jury in the Western District of Arkansas, Fort Smith

Division, indicted Nichols in an eight-count Indictment that charged him with violating 18

U.S.C. § 2251, production of visual depictions of a minor engaged in sexually explicit conduct

using materials that had been transported in interstate and foreign commerce. (ECF No. 1).

On July 2, 2008, Nichols filed a pretrial motion seeking suppression of physical evidence

and statements he made to an Alma police officer. (ECF No. 16). The District Court referred

Nichols' motion to the Magistrate Court. (ECF No. 20). Nichols filed a Motion to Dismiss the

-1-

Indictment on July 10, 2008. (ECF No. 35). The District Court entered a written Order on July 24,

2008, denying Nichol's motion to dismiss the Indictment. (ECF No. 51).

On August 27, 2008, after holding an evidentiary hearing on August 22, 2008, the Magistrate Court issued its Report and Recommendation recommending the denial of Nichols' motion to suppress. (ECF No. 61). Nichols objected. (ECF No. 63). The District Court issued an Order adopting in part and not adopting in part the Magistrate's Report and Recommendation. (ECF No. 65). The District Court ruled the statement made by Nichols to the Alma police officer was inadmissible, but ruled the physical evidence was admissible.

On September 16, 2008, Nichols appeared with his retained counsel, Craig L. Cook, before the Honorable Jimm Larry Hendren for a change of plea hearing. (ECF No. 67). A signed Plea Agreement was produced in which Nichols agreed to enter a conditional plea of guilty to Count Seven of the eight-count Indictment. (ECF No. 68). The conditional plea of guilty permitted Nichols to preserve his right to appeal the District Court's denial of his motion to suppress the physical evidence as well as his motion to dismiss the Indictment.

On or about October 27, 2008, an initial Presentence Investigation Report ("PSR") was completed. On November 7, 2008, the United States objected to the PSR and requested the PSR be amended to include the two-level enhancement found in U.S.S.G. § 2G2.1(b)(2)(A). On November 12, 2008, (later filed as ECF No. 74 on January 6, 2009), Nichols submitted nine objections to the PSR. A revised PSR was prepared on November 24, 2008.

On December 9, 2008, the Honorable Jimm Larry Hendren corresponded with Nichols' counsel and the United States about a letter Nichols had written to the District Court concerning

-2-

his representation. On December 11, 2008, Nichols' counsel filed a Motion to Withdraw as Attorney of Record due to a dispute over attorney fees and Nichols' indication he no longer wanted Mr. Cook to represent him due to the attorney fee issue. (ECF No. 69). A hearing was held December 18, 2008. The District Court entered an order denying Nichols' motion. (ECF No. 72).  The District Court directed that an amended PSR be prepared and submitted.

On December 22, 2008, Nichols submitted an objection to paragraph 26 of the PSR, objecting to the two-point enhancement requested by the United States. Nichols contended this enhancement was improper because he did not admit to conduct involving sexual contact or sexual gratification. (This objection was later filed as ECF No. 75 on January 6, 2009). On December 30, 2008, another revision to the PSR included the two-point enhancement requested by the United States. The PSR calculated Nichols' total offense level at 37, with a criminal history category of I, resulting in an advisory guideline range of imprisonment of 210 - 262 months.

On January 6, 2009, Nichols appeared before the Honorable Jimm Larry Hendren for sentencing. (ECF No. 77). After sentencing Nichols to 210 months imprisonment, (the bottom of the advisory guideline range), lifetime supervised release, and imposing a $10,000.00 fine and the $100.00 special assessment, Counts One through Six and Eight were dismissed. (ECF No. 78).

On January 12, 2009, Nichols filed a timely notice of appeal. (ECF No. 80). On appeal to the Eighth Circuit, Nichols challenged the denial of his motion to suppress evidence and motion to dismiss the Indictment. *See, United States v. Nichols*, 574 F.3d 633 (8th Cir. 2009). In a published opinion, the Eighth Circuit affirmed the judgment of the District Court on July 29,

2009. Id.

The Defendant filed the current Petition under 28 U.S.C. § 2255 on July 29, 2010 and contends that; (1)  He received Ineffective Assistance of Counsel; (2) The court failed to Give Due Weight to the Factors in 18 U.S.C. § 3353 (a) and the Supreme Court's ruling in United States v. Booker; and  (3) Sentencing Disparity, Similarly Situated Defendants & Empirical Basis.

According to the Pre-Hearing Information Sheet and the testimony taken at the hearing the Petitioner puts forth three grounds as a basis for his Ineffective Assistance Claim: A) Failure to Investigate, B) Failure to Inform concerning the Sentencing Guidelines and C) Failure to Appeal.

## II.  Discussion

The first complaint of the Defendant is that his counsel was ineffective in certain areas of his representation.

### 1.  Ineffective Assistance of Counsel

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To establish a claim of ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense). Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997)

The "deficient performance" prong of the two-part Strickland test can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted) There are two substantial impediments to making such a showing, however. First, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005)("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, the movant must also establish "prejudice"

to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different...a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (internal quotations omitted) Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir. 2007)(*citing Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004)) Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not ... need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

**A)  Failure to Investigate.**

The Defendant first contends that his attorney failed to investigate. *See  ECF No.* 102, p. 12.  In the context of a claim of failure to investigate, a petitioner can establish prejudice by showing that the discovery of evidence would have caused counsel to change his recommendation as to the plea offer. *Witherspoon v. Purkett*, 210 F.3d 901, 903 (8th Cir. 2000). This assessment depends largely "on a prediction whether the evidence likely would have changed the outcome of a trial." *Id*., 210 F.3d at 903.

The Defendant fails to identify anything in his pleadings concerning what information could have been discovered and how such information would have helped his case. Rather, Nichols simply submits general rules of law regarding the duty to investigate and conclusory

comments. At the hearing the Defendant could not testify to any fact that his attorney could have investigated that would have rendered a different result.

Conclusory allegations that are unsupported by the facts do not provide a basis for either an evidentiary hearing or postconviction relief. *See Hayes v. State*, 280 Ark. 509, 660 S.W.2d 648 (1983); *Greene v. State*  356 Ark. 59, 66-67, 146 S.W.3d 871, 877 (Ark.,2004). See also *Evans v. U.S.*  200 F.3d 549, 551 (C.A.8 (Iowa),2000); *See also U.S. v. Borrero*,   2009 WL 2005221, 3 (D.Minn.) (D.Minn.,2009).

Mr. Cook testified that he hired an investigator to talk to the witnesses that the Defendant had provided to him and that none of the witnesses provided any information that was beneficial to the Defendant. Mr. Cook testified that after a through investigation he felt that the Government would be able to prove its substantive case against the Defendant and the only argument the Defendant would have against the Government's case was to suppress the pictures that were obtained as a result of the search.

The Defendant's allegations that his attorney failed to investigate are conclusory, not supported by the facts and not supported by his own testimony and this claim has no merit.

**B, C, &D)  Failure to Inform concerning Sentencing Guidelines and to Object**

The Defendant next contends that "his attorney failed to keep him and his mother (who had power of attorney) informed of the developments of the case and the progress of preparing the defense." *See ECF No.* 102, p. 12. At the hearing on the Petition the Defendant argued that Mr. Cook failed to properly advise him concerning the sentencing guidelines.

Prior to the date the Defendant entered his plea both Mr. Cook and the Defendant acknowledged that the communication between them was fine.  The Defendant had been release

on bond on June 23, 2008 and could phone and come by his attorney's office at will. (ECF No. 10-11).  Mr. Cook testified that prior to the entry of his plea the Defendant did come by his office and communicate with him often.

The Defendant entered his plea on September 16, 2008 (ECF No. 68) and was remanded to custody under 18 U.S.C. § 3156(a)(4)(C). (ECF No. 95, p. 33). On or about October 27, 2008, an initial Presentence Investigation Report ("PSR") was completed. On November 7, 2008 the Government filed a detailed objection to the failure of the PSR to contain a two level enhancement found in U.S.S.G § 2G2.1(b)(2)(A) based on sexual contact. On November 11, 2008 Mr. Cook filed objections to nine paragraphs in the PSR but did not raise any objection to the Government's objection of November 7, 2008 requesting a two level enhancement for sexual contact.

Mr. Cook admitted that he never visited the Defendant in the county jail in order to filed his objections to the PSR but that he obtained information to place in his objections by communication with the Defenant's mother. (See ECF No. 95, p. 42).  Mr. Nichols testified that he could not contact his attorney because his office would not accept collect calls and that was the only kind of call he could place from the jail.  Mr. Nichols would, therefore, contact his mother and discuss the PSR and give her information to give to Mr. Cook to place in the PSR. Mr. Cook ultimately filed objections to nine paragraphs in the initial PSR. (See Government Exhibit # 2).

As a result of objections made by both the Government and Mr. Cook  a revised PSR was prepared on November 24, 2008.  At the time of the revised PSR Mr. Cook had still not made any objection to the Government's request for the two level enhancement for sexual contact. Mr.

Cook admitted that prior to filing his objections he had not sent a copy of the PSR to the

Defenant (Id.) and had not spoken with the Defendant since the plea. (Id., p. 43) but it is equally

clear that the Defendant was aware of the PSR and had communicated specific objections to the

PSR, albeit through his mother.

On December 11, 2008, Mr. Cook  filed a Motion to Withdraw as Attorney of Record due

to a dispute over attorney fees and Nichols' indication he no longer wanted Mr. Cook to

represent him due to the attorney fee issue. (ECF No. 69). A hearing was held December 18,

2008.  The court refused to allow Mr. Cook to withdraw and instructed him to visit his client

immediately. (ECF No. 72).

Mr. Cook testified that he did visit his client in the Sebastian County Detention Center on

December 19, 2008. (See Defendant's Exhibit #2).  He testified he believes he visited with him

in the hall of the detention center but may have gone into a separate room.  It appears the visit

lasted less than 30 minutes (Id.) but Mr. Cook testified that he did go over the PSR with the

Defendant at that time. The Defendant testified that Mr. Cook did not go over with him at that

time the two level enhancement that the Government was seeking for sexual contact (R.

00:23:22).  Mr. Cook could not remember if they discussed the two-level enhancement but on

December 22, 2008 Mr. Cook filed an objection to the enhancement for sexual contact. (ECF No.

75). The objection put the burden of proof on the Government at sentencing. *See U.S. v. Jenners*

473 F.3d 894, 897 -898 (C.A.8 (S.D.),2007) citing *U. S. v. Poor Bear*, 359 F.3d 1038 (However,

"[i]f the defendant objects to any of the factual allegations contained [in the PSR] on an issue on

which the government has the burden of proof, such as ... any enhancing factors, the government

must present evidence at the sentencing hearing to prove the existence of the disputed facts."

-9-

*Poor Bear*, at 1041. Unless the disputed facts have been proven by a preponderance of the evidence, the district court cannot rely on them at sentencing. Id. (citing *United States v. Hammer*, 3 F.3d 266, 272 (8th Cir.1993)). Otherwise, the sentence is in error and must be vacated and remanded for re-sentencing. *U. S. v. Wintermute*, 443 F.3d 993 at 1005.

Also on December 22, 2008 Mr. Cook sent a copy of the "U.S. Sentencing Commission Guidelines Manual" to the Defendant. (See Government Exhibit 7).  Mr. Cook also testified that in addition to the guidelines he sent the Defendant a copy of the Amended PSR and a copy of the Victim Impact Statement on December 30, 2008. (See Government Exhibit 9) (R. 05:06:47). Mr. Cook did admit that he did not visit the Defendant again prior to sentencing on January 6, 2009 and did not visit him again until January 9, 2009. ( See Defendant's Exhibit # 4).

The Defendant acknowledged to the court at sentencing on January 6, 2009  that he had enough time to visit with his attorney and talk about his case. (ECF No. 95, p. 64-65).  It is also clear that Mr. Cook filed a number of objections to the PSR and that communication occurred between the Defendant and his attorney prior to the sentencing hearing.

Defense counsel in fact presented mitigating evidence at the sentencing hearing. The District Court heard testimony from Nichols' mother who testified about her son's charitable work and donations to the police and fire departments. (ECF No. 95, p. 144). The District Court heard testimony from Nichols' former employer who testified about Nichols' volunteer work with children and the City of Fort Smith. (ECF No. 95, p. 147). While Mr. Cook's communication with the Defendant prior to sentencing cannot be said to be exemplary it did not rise to the level of being ineffective.

**A1)  Failure to file appeal.**

The Defendant did not raise a failure to appeal issue in his original petition but raised in his Reply the failure of Mr. Cook to pursue all of the issues on appeal that he understood were going to be appealed. (ECF No. 109).

If an attorney has consulted with his client about an appeal, he will not be found ineffective unless he fails to follow "express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). An attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to § 2255 relief. *Barger v. United States*, 204 F.3d 1180, 1181 (8th Cir. 2000) Where the defendant expressly requests that his counsel file an appeal and counsel fails to do so, thereby depriving the defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal. See *Hollis v. United States*, 687 F.2d 257, 259 (8th Cir.1982); *U.S. v. Saucillo* 2007 WL 522228, 3 (N.D.Iowa) (N.D.Iowa,2007)

Mr. Cook admitted that the Plaintiff entered a conditional plea based upon the right to appeal certain rulings made by the court (ECF No. 68, ¶ 3) which included the 1) the search of the Defendant's home and computer disk, 2) the order finding that the pictures were lascivious (ECF No. 51), and  3) the order denying the Defendant's Motion to Dismiss the Indictment (ECF No. 53).

Mr. Nichols testified that the appeal was to include the item listed in the conditional plea and also include the court's determination that the two level enhancement for sexual contact applied.  Mr. Cook disputed this assertion and maintained that the Defendant never instructed him to appeal the two level enhancement.

Mr. Cook admitted that his appeal only included the issue on the Motion to Suppress the

Search of the home and the Motion to Dismiss the Indictment. Mr. Cook testified that when he

filed his first Notice of Appeal on January 12, 2009 he did list as the basis of appeal that the

court "ruled against the defendant on the Motion to Suppress concerning the computer disks and

tower seized and the Motion to Determine if the photographs were Lascivious and did not apply

the sentencing guidelines correctly." (ECF No. 80). Mr. Cook filed an amended Notice of

Appeal on the same day which included the Motion to Dismiss the Indictment. (ECF No. 81).

The weight of the evidence supports the fact that Mr. Cook was instructed by his client to

appeal the court's ruling applying the two level enhancement for sexual contact and the issue of

whether the pictures were lascivious.

In this case Mr. Cook did file an appeal on the Defendant's behalf but appealed only the

search and seizure issue and did not include the issue concerning whether the pictures were

lascivious or the two level enhancement for sexual contact. Mr. Cook testified that his decision

to abandon the court's ruling in the lascivious nature of the pictures and the two level

enhancement was strategic because he felt they had no merit after he heard the testimony of the

officer at the sentencing hearing (R. 4:27:27) and had viewed the pictures.

The issue is which standard to apply to an appeal issue that is deliberately bypassed by the

Defendant's counsel. Normally a petitioner does not have grounds for relief if the failure to raise

a claim resulted from counsel's strategic choice. (*See Culp v. U.S.* 1992 WL 196743, 2 (C.A.6

(Tenn. (C.A.6 (Tenn.),1992) citing *United States v. Craig*, 827 F.2d 393 (8th Cir.1987)).

Ordinarily, strategic decisions are unchallengeable unless they are based on deficient

investigation." *Link v. Luebbers*, 469 F.3d 1197at 1204 (C.A.8 (Mo.), 2006). The Eighth Circuit

has recognized strategic decisions in state appeal briefs to pursue on the strongest claims and

drop others. *Wilson v. Armontrout,* 962 F.2d 817, 820 (C.A.8 (Mo.),1992).

A decision voluntarily and understandingly made for strategic or tactical advantage is "deliberate." *See Widgery v. U.S.*, 796 F.2d 223 at 229 (C.A. 8 (Mo. 1986)).  If a Petitioner's decision was deliberate, his failure to directly appeal his conviction will operate as a waiver of his right to challenge the conviction through a § 2255 proceeding. *See Widgery*, 796 F.2d at 225; *U.S. v. Little*, 608 F.2d 296 at 300.

The Supreme Court has significantly narrowed applicability of the deliberate bypass approach, opting in several habeas cases to apply instead the "cause and prejudice" test. *See, e.g., Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Eighth Circuit has applied the cause and prejudice test in such cases. (See *Cheek v. U.S.,* 858 F.2d 1330, 1335 (C.A.8 (Mo.),1988)) and it seems appropriate for this court to evaluate the failure of Mr. Cook to appeal the issues in question under the cause and prejudice test.

Mr. Nichols testified that he believed all of the issues would be appealed. Mr. Cook however repeatedly testified that he did not believe that there was any merit to appealing the court's rulings on the lascivious nature of the pictures or the two-level enhancement for sexual contact. Mr. Cook testified initially that he spoke with the Defendant about the brief and that they needed to "pursue the points that have the best chance of getting a reversal". (R. 4:33:53).  Mr. Cook on further cross examination stated that by the time he had a conversation with the

Defendant about the brief the Defendant was in Beaumont and the brief had been filed. (R. 4:36:20). Mr. Cook never got any clear direction from Mr. Nichols to abandon any issues on appeal but seems to have made the decision on his own.  Mr. Nichols however never filed any objection to the brief or voiced any objections to his attorney after the brief was filed about his failure to include the above points and may have acquiesced in the "strategy" propounded by his attorney.  Even if the court assumed that the Defendant has met the burden of the "cause" prong of the test he fails to establish that he suffered prejudice as a result of Mr. Cook's decision not to appeal the issues.

The second part of the Strickland v. Washington test is met when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668 at 694; *U.S. v. Resnick*, 745 F.2d 1179 at 1187-88.  While it is difficult to ascertain the appeal strategy in not having the Court of Appeals review the lasciviousness of the pictures or whether the District Court was correct in assessing the two level enhancement the court will examine the two issues to determine if the results of the proceedings would have been different had Mr. Cook appeal the issues in question.

**Lasciviousness of the Pictures:**

The question whether materials depict 'lascivious exhibition of the genitals,' an element of the crime, is for the finder of fact. *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir.2001). "Nudity alone does not fit this description; there must be an 'exhibition' of the genital area and this exhibition must be 'lascivious.' " *U.S. v. Horn*, 187 F.3d 781 at 789; *see also United States v. Kemmerling*, 285 F.3d 644, 645-46 (8th Cir.2002) ("We have held that more than mere nudity

-14-

is required before an image can qualify as 'lascivious' within the meaning of the statute."). "A

picture is 'lascivious' only if it is sexual in nature." *Kemmerling*, 285 F.3d at 646.

In determining whether a visual depiction of a minor constitutes a "lascivious exhibition

of the genitals or pubic area" under § 2255(2)(E), the trier of fact may look to the following

factors, among any others that may be relevant in the particular case:

> 1) whether the focal point of the visual depiction is on the child's genitalia
> or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in
> a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate
> attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to
> engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual
> response in the viewer.

Of course, a visual depiction need not involve all of these factors to be a "lascivious

exhibition of the genitals or pubic area." The determination will have to be made based on the

overall content of the visual depiction, taking into account the age of the minor. *U.S. v. Dost,*

636 F.Supp. 828, 832 (S.D.Cal.,1986). The Dost factors have been applied in the 8th Circuit but

the court has held that the Dost factors are neither "definitive nor exhaustive" *United States v.*

*Horn*, 187 F.3d 781, 789 (8th Cir.1999) nor do all six factors need to be present to bring the

depiction under the proscription of the statue. *U.S. v. Wallenfang* 568 F.3d 649, 657 (C.A.8

(Iowa),2009).

The evidence consists of eight pictures of a sleeping 7 year old girl partially clad in pajamas or panties.  All display her genitalia and some have her legs in a spread eagle position with a camera angle equal or below the position of her legs.  After an in camera hearing the court found the pictures satisfied the Dost criteria and determined them to be lascivious. (ECF No. 51).

No attempt was made by the Defendant at the hearing on the Petition to offer or explain how the pictures could not be classified as lascivious.  Because the photographs are clearly lascivious the Defendant has not been prejudiced by his attorney's tactical decision not to include the District Judge's order on appeal.

**Two point enhancement for sexual contact:**

The term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

The PSR which proposed the two-level enhancement contained language in paragraph 26 that the Defendant "would have moved the victim's pants and panties in order to (sic) pictures. The victim was touched in the vaginal area for the sexual arousal of the defendant".

As previously pointed out, this enhancement was added after the Government objected to the initial PSR on November 7, 2008. Mr. Cook did not file his objection to this paragraph until December 22, 2008 and only three weeks before the sentencing hearing which was held on January 6, 2009

The Defendant's Total Offense Level for the offense was 37.  This produced a guideline range of 210 to 262 months.  The Statutory Range for the offense was 180 to 360 months. If the

-16-

court had not approved the two-level enhancement for sexual contact the Total Offense Level would have been 35 with a guideline range of 168 to 210 months.

Michelle Lamb, the child's mother, testified at the sentencing hearing that when the photographs were taken she was asleep and the only other person in the home was Mr. Nichols. (ECF No. 95, p. 106). Ms. Lamb stated that her daughter was a very "hard sleeper"(Id.) and that her daughter's clothing had been manipulated in the pictures (Id., p. 106).  She testified that the condition of her daughters clothing in the pictures was never anything she had observed. (Id.) The Defendant's statement to the police at the time of arrest states that "I never touched her or molested her in any way." (Id., p. 96).

The pictures taken on February 20, 2007 show the child with her legs spread far apart and her panties are still on but have been pushed to the side to reveal her genitalia area.  It is clear that the sentencing court found by a preponderance of the evidence that for the Defenant to have moved the panties in such a way to expose her genitalia he would have had to have had contact with her inner thigh, groin or her genitalia (ECF No. 95, p. 142) and the act of exposing her genitalia while she was sleeping was an act of degradation. (Id., p. 143).

Preponderance of the evidence is the appropriate standard in the factual determinations at the sentencing phase.  It is well settled that post- Booker, district courts are permitted to engage in judicial factfinding, using the preponderance standard. *See e.g. Steele v. United States*, 518 F.3d 986, 989 (8th Cir.2008) (recognizing that judicial factfinding at sentencing is "deemed constitutionally permissible under Booker ..."). *U.S. v. Negrete,*  537 F.3d 918, 923 (C.A.8 (Iowa),2008).  The court acknowledged this standard during the sentencing hearing. (ECF No. 95, p. 135).

Because the two-level enhancement was clearly appropriate the Defendant has not been prejudiced by his attorney's tactical decision not to include the District Judge's ruling in his appeal.

**B1) Advice to Plea Guilty.**

Nichols alleges in his affidavit that counsel pressured him to change his plea to guilty and enter into a conditional plea agreement but this claim was abandoned at the hearing and no evidence was presented.  Notwithstanding the claim is without merit.

The Eighth Circuit has stated, "[a] guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed, self-determined choice if the accused relies upon counsel who performed ineffectively in advising him." *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir. 1981). To be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent, and because a guilty plea constitutes a waiver of various constitutional rights, it must be made with sufficient awareness of relevant circumstances and likely consequences. *See, e.g., United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999). At the same time, an accused's representations during plea-taking, such as those concerning the voluntariness of the plea, carry a strong presumption of veracity. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997).

The evidence and the testimony clearly indicated that the Defendant entered a knowing and voluntary plea.  By signing the conditional plea agreement, Nichols specifically represented his desire to change his plea to guilty was not the result of threats or coercion. (ECF No. 68 ¶ 26). At Nichols' change of plea hearing before the Honorable Jimm Larry Hendren, Nichols stated under oath that he was satisfied with his attorney's representation and advice. (ECF No. 95, pp.

3-4). Nichols also stated that he had read the conditional plea agreement before signing. (ECF No. 95, p. 6). Nichols told Judge Hendren he was not intimidated or forced into signing the agreement; he did so based on counsel's advice and because he believed that it was the right thing to do. (ECF No. 95, p. 7).  Chief Judge Hendren essentially went over each paragraph of the conditional plea agreement with Nichols and asked if he had read and gone over the contents with his counsel. Each time Nichols answered affirmatively. (See ECF No. 95, pp. 9-20)

**C1) Failure to Prepare to Testify at Suppression Hearing**

Nichols states in his affidavit that counsel failed to prepare him to testify at the suppression hearing, but does not address this claim in any detail, however, this claim was abandoned at the hearing and no evidence was presented.

An unsupported conclusion in the affidavit is insufficient to raise a credible question whether counsel's performance was either deficient or prejudiced the defendant. Nichols' claim is void of allegations clarifying how counsel failed to prepare him to testify and how any such error prejudiced the outcome of his case. Thus, Nichols' conclusory allegation is insufficient to establish ineffective assistance of counsel. *See Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001), cert. denied, 536 U.S. 963, 122 S.Ct. 2671, 153 L.Ed.2d 844 (2002)..  The claim is without merit.

**2.  Failure of the Court to Give Due Weight to the Factors in 18 U.S.C. § 3553(a) and the Supreme Court's Ruling in *United States v. Booker*.**

This claim was abandoned at the hearing and no evidence was presented, but, not-withstanding, the claim is without merit.

A federal prisoner may petition to vacate or set aside his sentence "upon the ground that

the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief is permitted only if a prisoner demonstrates "a fundamental defect which inherently results in a complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); see also United States Gomez, 326 F.3d 971, 974 (8th Cir. 2003) (applying standard).

No procedural error was committed. The District Court sufficiently addressed the § 3553(a) sentencing factors and recognized the advisory nature of the sentencing guidelines. (ECF No. 95, pp. 150-51, 158, 161). It is presumed "district judges know the law and understand their obligation to consider all of the § 3553(a) factors." United States v. Gray, 533 F.3d 942, 943 (8th Cir. 2008) (quoting United States v. Carty, 520 F.3d 984, 992 (9th Cir. 2008) (en banc)). "A mechanical recitation of the § 3553(a) factors is unnecessary . . . particularly when a judge elects simply to apply the advisory guideline range to a particular case." United States v. Zastrow, 534 F.3d 854, 855 (8th Cir. 2008) (quoting United States v. Todd, 521 F.3d 891, 897 (8th Cir. 2008)). "The Supreme Court [has also] acknowledged that 'when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation.' " Gray, 533 F.3d at 944 (quoting Rita v. United States, 551 U.S. 338 (2007)). "Where a sentencing judge imposes a sentence within the advisory guideline range, '[c]ircumstances may well make clear' that the judge believed the case was typical, and 'rest[ed] his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence.' " Id. (quoting Rita, 551 U.S. at 356-57). Thus, by applying these standards, the District Court did not commit procedural error in this case.

The District Court considered the PSR and the objections to it. The District Court heard testimony from witnesses and arguments from both Nichols' counsel and the prosecution. It is evident from the record that the sentencing court examined those materials, considered both parties' arguments and sentenced Nichols at the low end of the advisory guidelines range. (App. Tr, pp. 160-61).

### 3. Sentencing Disparity, Similarly Situated Defendant & Empirical Basis

The Defendant contended in his Petition that his sentence was unfair because other similarly situated defendants had received sentences below his sentence.  This argument was abandoned at the hearing and is without merit.

The Defendant received a sentence at the lower range of the sentencing guidelines.  A guideline sentence often may be appropriate, given the Sentencing Commission's expertise and the statutory purpose of avoiding unwarranted sentence disparities, see 18 U.S.C. § 3553(a)(6), but the district court must reach that conclusion on its own in light of the § 3553(a) factors, not because the court of appeals precludes a non-guideline sentence in the absence of extraordinary circumstances. See Gall, 128 S.Ct. at 595. U.S. v. Alexander  556 F.3d 890, 893 (C.A.8 (Ark.),2009)

The court acknowledged the advisory nature of the guidelines and that he was not bound to stay within the guidelines but could depart for good cause. (ECF No. 95, p. 158-159).  The court also specifically found that there was no basis for a departure from the guidelines. (Id., p. 162). The court specifically considered the factors in 18 U.S.C. § 3553. (Id., p. 160).  The Defendant's claim that he suffered a sentence disparity is without merit.

As a result of Mr. Cook's representation of the Defendant he was able to obtain a

suppression of the statement that he gave to the police, dismissal of seven of the eight counts listed in the Indictment, a dismissal of the state charges which were pending in Crawford County and an agreement by the Sebastian County Prosecuting Attorney not to pursue additional charges in that county. While there were several areas of Mr. Cook's representation of Mr. Nichols that could have been performed in a more diligent or transparent manner the Defendant has failed to establish that he was prejudiced by his attorney's actions and, to the contrary, has received substantial benefit as a result of Mr. Cook's efforts.

### III Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 2nd day of May 2011

*/s/ J. Marschewski*

James R. Marschewski
Chief United States Magistrate Judge

-22-